1303

HOME SALES, INC., Respondent v. CITY OF NORTH MYRTLE BEACH, and A. William Moss, of whom City of North Myrtle Beach is Appellant.

(382 S. E. (2d) 463)

Court of Appeals

*Louis M. Cook,* North Myrtle Beach, and *Roy D. Bates,* Columbia, *for appellant.*

*Howell V. Bellamy, Jr., Henrietta U. Golding* and *Preston B. Haines, III,* of *Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for respondent.*

Heard Dec. 7, 1988.

Decided March 13, 1989.

*Per Curiam:*

The appealed order of this case enjoined the City of North Myrtle Beach (the City) from opening up for public parking that part of Eighth Avenue running between Ocean Boulevard and the beach. We reverse and remand.

## FACTS

Tilghman Estates, Inc., on or about August 25, 1949, subdivided a tract of land situate within the City limits of North Myrtle Beach. Tilghman Estates subdivided the prop-

erty in order to develop it. The recorded plats of the subdivision reflect rectangular lots, some fronting on Ocean Boulevard, which was at the time of the subdivision a public highway running in a northerly and southerly direction through the subdivision. Other lots front on the platted streets designated as Fifth Avenue through Tenth Avenue which avenues run in an easterly and westerly direction between an area set aside on the subdivision plat as "Playground Park" which is adjacent to the high water mark of the beach and other lands of the Tilghman Estate designated as property to be developed.

Homes Sales, Inc., is the owner of a lot and residence located at the intersection of Ocean Boulevard and the street designated as Eighth Avenue on the subdivision plat. This property abuts the playground park or beach on its eastern boundary and is very valuable.

The City attempted to open that part of Eighth Avenue running between Ocean Boulevard and the playground park area on the beach.

Home Sales instituted this action against the City and by its amended complaint sought injunctive relief prohibiting the utilization of Eighth Avenue North between Ocean Boulevard and the sand dunes on the beach front for public parking. The complaint alleged, *inter alia*, (1) a cause of action seeking injunctive relief for the violation of applicable restrictive covenants, (2) a cause of action seeking injunctive relief for the violation of applicable City zoning ordinances and (3) a cause of action alleging the creation of and maintenance of a private and public nuisance.

The matter was referred to the master-in-equity with the right to enter a final order appealable directly to the Supreme Court.

The subdivision plat contains the following legend.

> Restriction lines as shown must be observed. An easement of five feet is reserved along the rear end of all lots for public utilities. The reserved area along the beach front is for use by the community as a park and playground. The avenues may or may not be opened to the strand at the discretion of the owners. In no case shall the front dune be disturbed by property owners without written consent of TILGHMAN ESTATES, Inc.

Tilghman Estates imposed upon the subdivision certain restrictive covenants by instrument dated March 25, 1950. The instrument creating the restrictive covenants is of record.

On March 3, 1983, Charles T. Tilghman, M. H. Tilghman, Catherine H. Tilghman and Mary Elizabeth Tilghman Dent, who presumptively were the owners of Tilghman Estates, Inc., now understood to be dissolved, executed a deed to the City in which they conveyed the avenues running from Ocean Boulevard to the beach and certain other property. The granting clause of the deed, which is in the usual form, grants, bargains, sells and releases unto the City, its successors and assigns forever the above-referred to property.

After the granting clause and after the description of the property conveyed the deed contains the following language.

> The GRANTORS reserve the right to open or not open the street ends aforesaid to the beach, and they have yet to so open any of the street ends. The GRANTORS so hereby grant to the GRANTEE the right to open the said street ends to the beach for pedestrian traffic, but the same shall not be opened to the beach for motor vehicle traffic. This restriction shall not be construed to prevent the GRANTEE from opening the said street ends and utilizing the same for the parking of motor vehicles or any other lawful public purposes.

The habendum clause provided:

> TO HAVE AND TO HOLD all and singular the premises before mentioned unto the said: GRANTEE, its successors forever in fee simple absolute.

The record reflects that for some years prior to the institution of this action, members of the public had on occasion driven their vehicles into the subject part of Eighth Avenue and pedestrians had use of the street end for access to and from the beach. The record also reflects that Home Sales used the avenue for purposes of entering the side entrance to its lot.

The evidence also reflects that on Memorial Day weekend, after the City had opened the street, that (1) approximately 30 cars parked in the designated parking area, some for

several days, (2) there was some littering and a trash container was turned over, (3) people used the avenue for entrance to the beach where they made noise, and some slept on the beach, (4) at night lights from the automobiles using the avenue shined into the Home Sales residence and (5) the noise from the horns of people using the avenue could be heard by the people in the home located on Home Sales property. Importantly, however, Home Sales notified the City of Myrtle Beach of only one incident of disorderly conduct. The police promptly responded and, as far as the record shows, put an end to the alleged disorderly conduct. There is no evidence of record indicating that Home Sales complained of or swore out a warrant against any person for disorderly conduct either on their property or Eighth Avenue.

The appealed order found, *inter alia*, (1) that as a matter of fact the subdivision plat reserved to the discretion of the lot owners the right to open or not to open the avenues to the strand, (2) that the restrictive covenants contained in the declaration of restrictions apply to the subject property which is an avenue or avenue end, (3) that the City is subject to any and all covenants, restrictions and limitations placed upon the subject property by the original grantor as set forth in the recorded plats and the declaration of restrictions, (4) that the zoning laws of the City of North Myrtle Beach restrict the subject property to private single family residences and commercial parking lots are not permitted under the zoning ordinances, (5) that the City began implementing plans for the development of Eighth Avenue into a "public parking" lot, (6) that the City did not obtain the consent of the lot owners in the subdivision to utilize Eighth Avenue, (7) that the City removed certain existing vegetation, leveled the property and applied coquina to a substantial portion of the subject property, (8) that the utilization of the property for the purposes of parking interferes with the property rights of adjoining property owners and that at all hours of the day and night vehicles travel in and out of the parking area and the automobile lights and noise disturb the property owners; debris and trash were accumulating in the parking area, persons have been urinating in the area, etc., and (9) that prior to the aforesaid acts

the adjoining property owners and the plaintiff did not experience disturbance of their quiet enjoyment of the property as they are now experiencing and have been experiencing since the creation of the parking lot.

The appealed order then concluded as a matter of law that (1) the subject plat reserved to the property owners rather than Tilghman Estates, Inc., the exclusive right to open or not to open the avenues, (2) that the purported conveyance from Tilghman Estates to the City cannot be relied upon by the City in order to utilize Eighth Avenue, (3) that the City did not have the right to open the avenue because this right is with the property owners, (4) that the deed from the Tilghmans to the City is ineffective to convey the right to open Eighth Avenue because that right was clearly reserved to the owners (lot owners), (5) that the restrictive covenants contained in the declaration of restrictions were applicable to Eighth Avenue and prohibited the use of the subject property as a parking lot, (6) that even though the City contends that it is not utilizing the property for purposes of parking but rather has simply opened the street for vehicular and pedestrian traffic as an access to the beach, it is clear from the evidence that the City has created a parking lot, (7) that the City is subject to its own zoning ordinances which prohibit the use of the Eighth Avenue as a parking lot, (8) that the City has permitted the property to be used as a nuisance, (9) since the utilization of the property for the purpose of parking is violative of the zoning ordinances of the City, a nuisance *per se* exists and if not a nuisance *per se* a nuisance *per accidens*, (10) that the use by the City of the subject property deprives the plaintiff and others of the quiet enjoyment of their property and (11) based on the above findings of fact and conclusions of law, the appealed order enjoined the City from utilizing the subject property for parking.

## ISSUES

The issues presented on appeal are whether (1) the subdivision plat conveyed to the property owners any power over the use of Eighth Avenue and the other avenues designated on the plat, (2) whether the City had a legal right to open Eighth Avenue for vehicular traffic and parking, (3)

whether the opening of Eighth Avenue violated Home Sales' right of quiet enjoyment of its property, (4) whether the City intended to open a parking lot on Eighth Avenue rather than a street for access to and from the beach, (5) whether the opening of Eighth Avenue violated either the restrictive covenants imposed on Tilghman Estates or the City's zoning ordinances and (6) whether the City has created or maintains by the opening of Eighth Avenue a nuisance *per se* or a nuisance *per accidens.*

## DISCUSSION

### I.

It has long been the law of South Carolina that when one develops a subdivision and sells lots by reference to a plat, there is an implied dedication of roads to the use of the lot owners and of the public unless a contrary intent clearly appears. *See Briarcliffe Acres v. Briarcliffe Realty Co.*, 262 S. C. 599, 206 S. E. (2d) 886 (1974). However, this principle of law does not apply in the instant case. The legend on the subdivision plat clearly and unambiguously indicates an intent that the avenues to the strand were not to be dedicated by virtue of the plat. And we so hold.

The finding by the trial court that a power over the use of the avenues was granted by the plat to the property owners is erroneous as a matter of law. No authority is necessary for the proposition that title to and incidents of title to real estate in South Carolina can only be passed by a deed of conveyance, devise or inheritance. It is also the well-recognized law in this nation and state that a power can be conferred only by an instrument executed with the same formalities as would be necessary for the disposition of the subject matter of the power. 72 C. J. S. *Powers,* Section 7 (1987), and the cases therein cited. And we so hold.

We therefore hold as a matter of law that the legend on the subdivision plat is not effective to and did not convey any power or right incident to ownership over Eighth Avenue to the plaintiff or other property owners of Tilghman Estates.

Moreover, even if a legend on a plat can somehow convey the power to decide whether the streets in a subdivision should be opened, the legend on the plat

in the instant case did not convey any such power. Rather, it is clear that the legend was merely intended to indicate that Tilghman Estates, Inc., the subdivider, would decide later whether to open the avenues to the strand, so that no dedication of the avenues as already opened would arise as a result of the plat. It would be patently illogical to construe the legend as conveying the power over the avenues to all of the individual lot owners in the subdivision, collectively. To construe the legend in this way would only create further ambiguities. How would the individual lot owners go about exercising the power? Would a vote among them be required? What procedure would be followed in conducting the election? Who would conduct it? How often? Instead of a vote, could an individual lot owner simply express himself or herself individually? If so, would it have to be in writing? Once given, could it be withdrawn? If so, would there be any time limitation on the right to withdraw? Finally, and perhaps more profoundly difficult to resolve, would a majority decide whether to open or not open the avenues or would the decision have to be unanimous? If, on the other hand, the language of the legend regarding opening or not opening the avenues is construed as referring to Tilghman Estates, Inc., these questions are not presented. The corporation can, of course, act on the matter as provided by its bylaws. (As a matter of fact, Tilghman Estates, Inc., has acted by the conveyance to the city.) We, therefore, further hold that the language of the legend regarding opening or not opening the avenues was not intended to refer to the individual lot owners. And we so hold.

## II.

In the case presently before us, the deed from the Tilghmans is a valid deed and conveyed to the City of North Myrtle Beach a fee simple title to that part of Eighth Avenue which is the subject matter of this action. And we so hold. Accordingly, we hold that as a matter of law, the City had an absolute right to open Eighth Avenue for vehicular traffic and parking. Even assuming the language of reservation or restriction in the deed to be effective, the City's use of the property conforms.

### III.

The appealed order held that the City of North Myrtle
Beach interfered with the right of quiet enjoyment of
Home Sales, Inc., to its property. This holding is for
obvious reasons erroneous. The plat by which Home Sales,
Inc., purchased their property was clearly reflected on that
plat. Any covenant of quiet enjoyment conveyed Home Sales
was subject to the rights of the public to the use of Eighth
Avenue if and when it was opened. This is true because
Home Sales had constructive knowledge, if not actual
knowledge, of the right of the public to the use of the avenue
when and if it was open. And we so hold. The right to be free
of vehicular noise, lights and traffic is discussed under Sec-
tion VI hereof in our discussion of the nuisance issue.

### IV.

The preponderance of evidence of record before us
does not support the finding of fact or conclusion of
law of the appealed order that it was the intent of the
City to use the subject part of Eighth Avenue as a parking
lot. The record clearly reflects that the plan intended to be
implemented by the City provided for traffic to and from
Eighth Avenue to the beach along with parking privileges on
both sides of the traffic portion of the street. In developing
Myrtle Beach and North Myrtle Beach the Tilghmans very
wisely provided that the beach along that part of the Grand
Strand of this state would be accessible to the public and be
public property. Moreover, in developing this area of the
South Carolina beach, the Tilghmans provided streets run-
ning in an easterly and westerly direction right up to the
beach, thus providing for access by the public to and from
the beach. The subject part of Eighth Avenue is one of these
streets which were so wisely provided as access for the
public to use the beaches of the Grand Strand. We find and
hold that the preponderance of evidence of record estab-
lishes that the subject part of Eighth Avenue was a street
with parking privileges and that the appealed order erred in
finding as a matter of fact and concluding as a matter of law
that the City had created a parking lot on Eighth Avenue.
And we so hold.

## V.

The appealed order held that the opening of the subject part of Eighth Avenue violated either the applicable restrictive covenants or the zoning laws of North Myrtle Beach. This part of the appealed order is premised upon the propositions that (1) the subject part of Eighth Avenue as delineated on the subdivision plat is a lot rather than a street and (2) that the City planned to use the subject part of Eighth Avenue exclusively as a parking lot rather than a street to accommodate traffic to the beach area as envisioned by the Tilghmans. Both of these propositions are erroneous. We have held in this decision that the plan of the City was to open up a street and not a parking lot. The subject part of Eighth Avenue is delineated on the subdivision plat as a street end and not as a lot. We therefore hold that the master erred in holding that the opening of the subject part of Eighth Avenue (1) violated the restrictive covenants imposed on the subdivision and (2) violated the City's zoning ordinance. These holdings were erroneous and we so hold.

## VI.

The appealed order held for reasons later discussed that the utilization of the subject part of Eighth Avenue by the City for what it concluded to be a parking lot constituted a nuisance *per se* because of its violation of the zoning ordinance. It further concluded, "Even if the violation of the zoning ordinance did not exist, utilization of the property is a nuisance *per accidens* by reason of the circumstances, location and surroundings. The noises, pollution, trash, and other activities associated with the parking area depriving [sic] the surrounding property owners of the quiet enjoyment of their property and if the property is continued to be utilized for public parking the grievances will continue to occur."

The traditional test for determining what is a nuisance *per se* is that the nuisance has become dangerous at all times and in all circumstances to life, health or property. *Suddeth v. Knight*, 280 S. C. 540, 314 S. E. (2d) 11 (Ct. App. 1984).

A nuisance *per accidens* is an act, occupation or structure which is not a nuisance *per se*, but which may become a nuisance by reason of circumstances, location or surrounding. *Neal v. Darby*, 282 S. C. 277, 318 S. E. (2d) 18 (Ct. App. 1984).

We have previously held that the opening of the subject part of Eighth Avenue does not violate either the applicable restrictive covenants or the City's zoning ordinance and that the appealed order erred in so holding. Since we hold in this decision that there is no violation of the City's zoning ordinance and because we find no fact of record supporting the proposition that the opening of the subject part of Eighth Avenue constitutes a situation dangerous at all times and under all circumstances to life, health or property, the appealed order erred in holding that a nuisance *per se* had been created. And we so hold.

The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing or activity itself. A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured. Public nuisances are indictable. Private nuisances are actionable, either for their abatement, as in the case before us, or for damages. *State v. Turner*, 198 S. C. 487, 18 S. E. (2d) 372, 375 (1942).

Although Home Sales alleged a public nuisance, the appealed order, as we interpret it, failed to find that a public nuisance had been created by the City. As was noted above, the only difference would be whether the alleged nuisance of the City offended the public at large or just Home Sales.

The opening of the street cannot constitute a public nuisance. Nothing is a public nuisance which the law itself authorizes. *Law v. City of Spartanburg*, 148 S. C. 229, 146 S. E. 12 (1928); *see also* 66 C. J. S. *Nuisances*, Section 17(a) (1950). We hold that the appealed order is erroneous insofar as it holds that the opening of the subject part of Eighth Avenue in itself constituted an act which resulted in a nuisance. And we so hold. If a nuisance did in fact develop or was in fact created by circumstances, these circumstances were the results of those who used the street in the manner

complained of by Home Sales and not by any act of the City itself.

A private nuisance for which a plaintiff seeks an injunction, as they did in this case, or damages, as it might have, is a tort. 66 C. J. S. *Nuisances*, Section 8(a) (1950). In order to constitute an actionable nuisance, a wrongful act of the defendant must be shown and the maintenance of the nuisance must be the natural and proximate cause of the injury suffered by the plaintiff. See *id.*, Section 8(b) at 743.

We have held that the City had a legal right to open the subject part of Eighth Avenue as a street along which there are designated parking areas and, consequently, the opening of the street cannot be the wrongful act upon which the tort of nuisance might be based. Implicit, however, in the appealed order is a ruling that the wrongful act of the City was the failure to properly police the subject property. Stated differently if there is a basis found by the appealed order to justify the abatement of a nuisance by an injunction it is an act of omission rather than an act of commission. This then presents a factual issue as to whether there was a failure on the part of the City to police the area thereby allowing a use of the property which injured or damaged Home Sales legal rights which are incident to its ownership of the adjacent lot.

And we hasten to add that the question is not whether Home Sales has been annoyed or disturbed by the alleged wrongful use of Eighth Avenue but whether there has been an injury to its legal rights. People who live in organized communities must of necessity suffer some inconvenience and annoyance from their neighbors and must submit to annoyances consequent upon the reasonable use of property and streets by others. *Winget v. Winn-Dixie Stores, Inc.*, 242 S. C. 152, 130 S. E. (2d) 363 (1963).

In the situation before us, Home Sales bought their property subject to a recorded plat showing the subject part of Eighth Avenue. Not only that, it is common knowledge that the layout, scheme or plan of nearly all of Myrtle Beach provide for streets or public access to the beaches. Although repetitious, we again observe that this one factor distinguishes the Grand Strand of South Carolina

from beaches such as those in Florida where the owners of the lots abutting the ocean own the beach area. The Tilghmans, in developing the whole of Myrtle Beach and North Myrtle Beach, had the foresight to reserve the beach area for the public at large to enjoy. The Tilghmans also had the foresight to plan avenues or streets such as Eighth Avenue to permit the public access to the beach area. When Home Sales purchased this property, they had full knowledge that Eighth Avenue might be opened to the public. This knowledge, we hold, affects the legal rights incident to Home Sales' ownership of the corner lot at the intersection of Ocean Boulevard and Eighth Avenue in North Myrtle Beach. Freedom from the noise and inconveniences of traffic cannot be considered, under the circumstances of this case, as a legal right incident to the ownership of this property. And we so hold.

The degree of annoyance or inconvenience which must be produced to constitute an actionable nuisance cannot be definitely stated; no fixed rule can be given that will be applicable to all cases. Each case must therefore depend largely on its own facts. *State v. Turner, supra; see also* 66 C. J. S. *Nuisances,* Section 18(a) at 764 (1950). As noted the record discloses that the police department of Myrtle Beach was notified only one time of disorderly conduct which occurred on the subject part of Eighth Avenue; there was a prompt response by the police of North Myrtle Beach and, as far as we can determine from the record, the police action satisfactorily dispensed with the alleged disorderly conduct.

Home Sales admits that it made no complaints to the police except on the one occasion noted. Home Sales swore out no warrant for the alleged offenders of the peace. This Court is confident that the City of North Myrtle Beach has ordinances prohibiting disorderly conduct, drunkenness, etc. Home Sales failed to take advantage of the alleged violation of these ordinances. And this is the core of the case because Home Sales' remedy for the situation that it complains of was to report to the City the misconduct complained of and thereby afford the City an opportunity to properly police the subject part of Eighth Avenue.

We have carefully reviewed every word of the transcript of record. Having done so, we hold that Home Sales failed to

establish by the preponderance of the evidence of record that the City maintained a nuisance on the subject part of Eighth Avenue. The appealed order was erroneous in its contrary holding. And we so hold.

## CONCLUSION

For the reasons stated in the above discussion, we hold that the Master erred in holding (1) that the deed from the Tilghmans was ineffective to convey to the City the right to open the Eighth Avenue street end, (2) that the City did not have a legal right to open the subject part of Eighth Avenue, (3) that the legend of the subdivision plat created a power in the lot owners, (4) that the City proposed to create a parking lot rather than a street in its plan to open Eighth Avenue, (5) that the opening of Eighth Avenue violated the appellant's right to quiet enjoyment of his property, (6) that the opening of said street violated the applicable restrictive covenant and/or zoning ordinance, (7) that the City created or maintained a nuisance by the opening of Eighth Avenue. We further hold that the appealed order is in error in any finding or holding inconsistent or inconsonant with this decision.

For the reasons given, the appealed order is reversed and the case is remanded with directions to enter judgment in accordance with this decision.

Reversed and remanded.